## E. and A. FRIDGE *v.* JOHN BUHLER et al.

Where executors, without judicial sanction, compromise a note given for the purchase of property of a succession, they will be held liable for the amount of the note so compromised, unless they can show there was a defence to the note, or the insolvency of the party bound to pay the note.

APPEAL from the District Court of East Baton Rouge, *Burk,* J.

*J. M. Elam,* for plaintiffs, contended: Should the court conclude to examine into the merits of this case, the authorities cited by appellant's counsel, from 6 L. R. 225, and 2 L. R. 148, will show that the plea of *res judicata* was properly overruled.

The judgment only condemned the executors to account for one note. There is no legal evidence as to the deficiency in the quantity of land sold as belonging to *Fridge's* succession. The land was not surveyed. There might have been an error in making *Roach's* inventory, or *Roach* might have sold a part of the land before his death. Be that as it may, neither *Buhler* nor *Tabitha Fridge,* who has not appealed from the judgment, had any right to compromise extrajudicially the interest of the estate they represented.

*G. S. Lacey,* for defendant, contended: *Alexander Fridge,* the father of petitioners, having departed this life, *John Buhler* and *Tabitha Fridge* were

qualified as his tesamentary executor and executrtrix, and accepted the adminis-
tration of his estate.

On the 8th May, 1835, *Buhler* filed his petition in the then Probate Court of East Baton Rouge, together with his tableau of distribution, and prayed " that after due publication of notice, the same might be homologated and made the judgment of the court, and he discharged."

May 22, 1835, a judgment was rendered: "In this case it appearing to the court that due notice has been given, as required by law, to all persons interested, to oppose the tableau of distribution, and more than ten days having elapsed from the date of such notice, it is ordered, adjudged and decreed, that the said tableau be homologated ; that the said executor be authorized to pay the creditors in conformity thereto ; and that on filing his vouchers and receipts in court, his bond be cancelled and annulled."

The vouchers and accounts being filed, *Buhler* considered himself discharged. Thus matters stood until December, 1846, when the plaintiffs, who are two of the heirs of the deceased, *Fridge*, filed their petition, calling upon their mother and *Buhler*, as executrix and executor, for the rendition of their account. *Buhler* excepted to the plaintiffs' action, on the ground that he had been discharged by the judgment of the probate court, above referred to ; and prayed to be dismissed. The court *a quo* considered that the judgment urged as the basis of the plea of *res judicata* was not binding upon the plaintiffs, they not having been cited, and the published notice not operating against them, and overruled the exception filed by *Buhler*.

The exception having been overruled, *Buhler* filed his answer, and reserving to himself his right of appeal from the judgment on the plea of *res judicata*, re-offered the account previously filed by him as executor, and to which the court was referred.

To the aforesaid account an opposition was filed by the plaintiffs, for the reason that the executor is responsible for the two notes of $300, with interest from maturity, being the two last installments of the purchase money drawn by *William Roach*, and endorsed by *Isett* and *Slaughter*, secured by mortgage on a tract of land sold at the succession sale of *Alexander Fridge*, as shown by the adjudication. The cause was tried upon the aforesaid opposition, and a judgment rendered in favor of the plaintiffs, and from such judgment the defendant, *Buhler*, has appealed.

The first quesion which presents itself for consideration is, ought the exception of *res judicata* to have been sustained ? We freely admit that the settlement of this question must depend upon the solution which your honors may give to another, viz : was it necessary to have cited in the heirs of *Fridge* to the probate proceedings of *Buhler*, under which he claims to have been discharged? If it were, the exception of *res judicata* was properly overruled. We frankly refer the court for information, to 6 L. R. 225; 2 L. R. 148.

If the judgment of the lower court overruling the plea of *res judicata* be affirmed by your honors, we will be driven to consider the case upon its merits ; and in doing so, we will contend that the defendant is not responsible for the amount of the two notes mentioned in the opposition, and which is made the sole ground of liability for a recovery.

We are not liable for the note given for the first installment, because the amount of that note is already charged against *Buhler* in the account by him filed. Nor are we liable for the note given for the second installment, for the reason that this note, (on account of a deficiency of land for which the note was in part given by *Roach* at the time of his purchase,) was surrendered to the estate of *Roach*, upon the payment of one hundred dollars; and which amount was received by the plaintiff's mother, she then being their tutrix.

I am aware, that it was perhaps a stretch of authority for either the executor or executrix to enter into a compromise relative to the note under consideration ; nevertheless, they cannot be made responsible to the plaintiffs on account of such transaction, if the latter have sustained no damage. We consider *Gates* v. *Bell*, 3d Ann. 63, applicable to the present action, and the rule therein laid down is sufficiently broad to protect *Buhler* from liability to the plaintiffs in this suit. In the case referred to, the sheriff had transcended his authority, in releasing sequestered property without taking a legal bond ; yet, as he acted in good faith, the court limited itself to the inquiry of the real and actual damage which *Gates* had sustained by not having a bond obligatory upon the security. The same equitable rule may be inferred from *Gaulden* v. *McPhaul*, 4th Ann. 81. What

damage then have the plaintiffs sustained by the compromise? None, clearly, if they have by such compromise yielded up nothing more than the law would have taken from them had the estate of *Roach* been sued upon the note compromised.

Upon referring to the inventory in the estate of *Fridge,* the court will perceive that the land subsequently sold to *Roach,* is made to contain two hundred and forty acres more or less, when it in fact contained but two hundred arpents. The price deducted bears about the same proportion to the whole price as the deficiency in the tract sold to *Roach* to the entire track; and the deduction is not only equitable, but would have been enforced by law in an action upon the note: unless the fact of the sale being made by metes and bounds and with the terms more or less would have produced a different result. If, then, the amount released by the executrix would have been deducted by the court in an action upon the note, the plaintiffs have sustained no damage by reason of the aforesaid compromise; and, under the authorities above cited, *Buhler* should have been relieved from all responsibility on account of such note.

Even if the compromise was illegal and the plaintiffs have really sustained damage to the amount of the note under consideration, principal and interest, judgment for such amount should have been rendered against their mother, as their tutrix.

Upon reading the testimony, your honors will at once perceive that the transaction relative to the above mentioned note was alone conducted by the mother of the plaintiffs, *Buhler* having nothing to do with it. The plaintiffs, moreover, have ample security of their mother as tutrix, and can well recover the amount of the note compromised, by charging the same to her as tutrix. There is no reason, at least in equity, why *Buhler* should be made responsible; and if the plaintiffs can be protected in the manner above urged, the judgment should not have been rendered against him.

The judgment of the court was pronounced by

SLIDELL, J. From the evidence before us, it does not appear that *Roach* had a legal defence against the note which he gave the executors for the price of property of the deceased purchased by him, and which they failed to collect. As the compromise made by one of the executors was without judicial sanction, and as they have not excused themselves by showing the insolvency of *Roach* or an absence of legal liability on his part, they were properly held liable for its amount.

A plea of prescription was filed in this court. In declining to sustain it, it is sufficient to observe that the plaintiffs and the other heirs of the deceased were minors at his death; and the evidence does not inform us at what time they came of age. It appears that some of them are still minors.

The judgment of the district court is therefore affirmed, with costs.